AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*
Apple iPhone 13 with IMEI: 352678434577844, CURRENTLY LOCATED AT THE COLUMBUS POLICE PROPRETY ROOM, 724 EAST WOODROW AVENUE, COLUMBUS, OHIO 43207

)
)
)
)
)
)
)

Case No. 2:26-mj-57

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

located in the _____ Southern _____ District of _____ Ohio _____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit in support, incorporated here by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Tyler Schwab FBI
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: February 4, 2026
_____

City and state: Columbus, Ohio
_____

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE FOLLOWING IPHONES: Apple iPhone 13 with IMEI: 352678434577844, AND Apple iPhone 16 Pro with IMEI: 356373411060982, CURRENTLY LOCATED AT THE COLUMBUS POLICE PROPRETY ROOM, 724 EAST WOODROW AVENUE, COLUMBUS, OHIO 43207 | Case No. 2:26-mj-57 _____<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler Schwab, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search and examination of property – the electronic devices below – which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B:

a.     An Apple iPhone 13 with IMEI: 352678434577844 ("DEVICE 1"); and

b.     An Apple iPhone 16 Pro with IMEI: 356373411060982 ("DEVICE 2")

(together hereinafter "ELECTRONIC DEVICES"), and all further described in Attachments A. The ELECTRONIC DEVICES are currently located at the Columbus Police Property Room located at 724 East Woodrow Avenue, Columbus, Ohio 43207. The Columbus Police Property Room is located in the Southern District of Ohio, Eastern Division.

2.     I am a Special Agent with the Federal Bureau of Investigation and have been since January 6, 2019. Your Affiant has been assigned to the FBI Safe Streets Task Force in

Columbus, Ohio, since January of 2023. Prior to being assigned to the Safe Streets Task Force, I was assigned to the Joint Terrorism Task Force (JTTF) for approximately four years. During my assignment at the JTTF, I was a Case Agent and Co-Case Agent for multiple international and domestic terrorism investigations. While assigned to the JTTF, your Affiant received specialized training in international terrorism and homicide investigations. Furthermore, I have received training in computer-related crimes as well as in the criminal use of email, social media, and telephonic communications.

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other law enforcement agents, organizations, including the Columbus Division of Police (CPD). This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on the facts set forth in this affidavit, there is probable cause to believe that a violation of 21 U.S.C § 841(a)(1) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances) (Target Offense) has been committed by Zakaria DAHIR (DAHIR). There is also probable cause to search the ELECTRONIC DEVICES, as described in Attachments A, for evidence, instrumentalities, contraband and fruits of that crime, as further described in Attachment B.

5.      The applied-for warrant would authorize the forensic examination of the ELECTRONIC DEVICES for the purpose of identifying electronically stored data, particularly described in Attachment B.

2

## PROBABLE CAUSE

6.     The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation into the violation of the Target Offense. The current investigation involves DAHIR being in possession of approximately 1,000 grams of cocaine.

7.     On April 25, 2025, at approximately 6:24 p.m., CPD Officer Daylong and CPD Officer Grice were in a marked CPD vehicle on routine patrol in the area of East Hudson Street and Cleveland Avenue.  While stopped at a red light on East Hudson Street at Cleveland Avenue, a white Dodge Ram pickup truck with Illinois license plate FP 200229 clipped the mirror of the CPD vehicle Office Daylong and Officer Grice were in.  This resulted in the mirror of Officer Daylong and Officer Grice's CPD vehicle being cracked.  Officer Daylong and Officer Grice observed the passenger of the white Dodge Ram pickup truck fix the mirror on the pickup truck and wave out the window to officers.

8.     Officer Daylong and Officer Grice then activated the overhead lights and sirens on their CPD vehicle and conducted a traffic stop on the white Dodge Ram pickup truck with Illinois Tag FP 200229. The white Dodge Ram pickup truck pulled over on Cleveland Avenue just south of Kenmore Road. Officer Daylong then approached the vehicle on the driver's side while Officer Grice approached the vehicle on passenger side.

9.     Officer Daylong spoke to the driver, who was later identified by his Ohio Driver's License as DAHIR.  DAHIR apologized to Officer Daylong for hitting the mirror and told Officer Daylong that he forgot how big the truck was. Officer Daylong asked DAHIR for his driver's license and rental paperwork for the white Dodge Ram pickup truck. DAHIR stated the rental was under his friend's name, but his friend allowed him to drive the white Dodge Ram pickup truck. Officer Daylong observed DAHIR grab his driver's license out of a blue satchel

3

that was next to him between the center console and the seat. Officer Daylong retrieved DAHIR'S driver's license and went back to the cruiser to run his license.

10.     Officer Grice spoke to the passenger, later identified via OHLEG as █████████ █████ and asked him for his identification to which he stated he did not have, but could provide his identification information. Officer Grice asked both DAHIR and ███ if there were any weapons in the vehicle, to which DAHIR stated there was not. Officer Grice observed that there were two suitcases in the back seat of the truck and asked DAHIR and ███ where they were traveling. DAHIR stated that he was going to Minnesota to visit family and was in a hurry to get to his ride. DAHIR stated that he needed to be at the ride-share location at 6:00 p.m., Officer Grice noted that it was approximately 6:25 p.m. at that time. Officer Grice then asked DAHIR if he had the rental agreement for the white Dodge Ram pickup truck. DAHIR then opened the center console to retrieve the rental documents. When DAHIR opened the center console, Officer Grice observed a bag consistent with marijuana packaging and asked DAHIR if there was any more marijuana in the vehicle, to which DAHIR stated there was no marijuana in the vehicle. DAHIR began to reach around the marijuana packaging while stating there was no marijuana in the vehicle. After a short time, DAHIR retrieved the marijuana packaging and stated that it was empty before handing it to ███ Officer Grice then informed both individuals that he could smell marijuana coming from the vehicle before returning to the CPD vehicle to complete a LEADS inquiry on ███

11.     CPD Officer Pifer, CPD Officer Vaughan, and CPD Sergeant Jefferson then arrived on scene to assist. Officer Grice informed the other CPD Officers and Sergeant of the burnt marijuana smell coming from the white Dodge Ram pickup truck and advised them of the story provided by DAHIR. Officer Grice explained that DAHIR'S story, travel time, and

4

estimated departure time did not make sense. Additionally, DAHIR'S behavior in regard to the marijuana packaging appeared erratic and overly nervous. After completion of the LEADS inquiry on ███ Officer Grice returned to the vehicle and assisted in removing DAHIR and ███ from the vehicle due to the smell of burnt marijuana coming from the vehicle.

12. Officer Vaughan had DAHIR exit the vehicle and walk to the rear of the vehicle where Officer Grice met him. DAHIR immediately requested to call "easy-ride" and inform them he was pulled over by police and was going to be late. Officer Pifer then had ███ exit the vehicle and walked him towards the rear of the white Dodge Ram pickup truck. During this time, Officer Vaughan and Officer Daylong completed a search of the motor vehicle based on the smell of burnt marijuana coming from the vehicle. During the search of the vehicle, Officer Daylong located a handgun between the passenger side front seat and the center console of the vehicle, directly next to where ███ was sitting. Officer Daylong noted that the firearm was barrel down and the handle faced towards the front of the truck. At this time, Officer Vaughan and Officer Daylong informed Officer Pifer and Officer Grice to place DAHIR and ███ in handcuffs. Officer Grice placed DAHIR in handcuffs and completed a search of DAHIR'S person incident to arrest. During the search incident to arrest of DAHIR, Officer Grice removed approximately $1900 in cash from DAHIR'S person. DAHIR was then placed in the rear of a CPD vehicle. Officer Pifer then completed a search of ███ person and secured him in the rear of another CPD vehicle.

13. Officer Daylong then recovered the firearm from white Dodge Ram pickup truck and noted it was a Glock 43X 9MM, bearing serial number CACP169, and that it was loaded with one (1) live round of ammunition in the chamber and 14 live rounds of ammunition in the magazine. Officer Daylong secured the firearm inside of a CPD vehicle.

5

14.     Officer Pifer then removed one of the suitcases from the back seat of the white Dodge Ram pickup truck and placed it on the tailgate to search. Officer Pifer noted that the suitcase was locked with a blue lock. Officer Pifer then located a blue key in the blue bag that DAHIR had next to him when he was in the white Dodge Ram pickup truck. Officer Pifer then used this key to unlock the suitcase. During a search of the suitcase, Officer Pifer located multiple cell phones, to include DEVICE 1 and DEVICE 2, and a white "brick" like item wrapped in pink cellophane, which was wrapped in a pair of gym shorts. Based on Officer Pifer's training and experience, he immediately recognized this item to be a "kilo" or a kilogram of narcotics.

15.     The white "brick" like item that was found during the search of the white Dodge Ram pickup truck was sent to the Columbus Police Crime Laboratory, where it was tested. The white "brick" like item was found to be approximately 1,046.75 grams of cocaine.

16.     I know through my training and experience that individuals that traffic drugs often carry firearms and large amounts of cash. In this case, a loaded Glock 43X 9MM was found in the white Dodge Ram pickup truck. Additionally, DAHIR was found to be carrying approximately $1,900 in cash on his person.

17.     I also know through my training and experience that individuals who traffic drugs often use multiple cell phones to coordinate, plan, execute, hide evidence, and avoid detection for such criminal activity. In this case, multiple cell phones, to include DEVICE 1 and DEVICE 2, were found in a locked suitcase, that belonged to DAHIR. I also know that individuals involved in the trafficking of illegal drugs often use multiple cell phones to coordinate meetups with co-conspirators and others involved in the buying, selling, and transporting of drugs. Those individuals also use cell phones for navigation purposes both to and from the site of drug buys

6

and stash houses. Likewise, those individuals may use cell phones to take photographs and videos of themselves in possession of drugs and cash from the proceeds of selling drugs. The individuals may also use cell phones to destroy or hide evidence of their crimes, to discuss and/or divide the proceeds of their crimes, and to avoid detection for their crimes. This use of cell phones involves calls, texts, social media applications, navigation tools, and a host of other available applications.

18.     I also know from my training and experience that "cell phones and the services they provide are 'such a pervasive and insistent part of daily life' that carrying one is indispensable to participation in modern society." *Carpenter v. United States*, 585 U.S. 296, 315 (2018) (quoting *Riley v. California*, 573 U.S. 373, 385 (2014)).

### TECHNICAL TERMS

19.     Based on my training and experience, I use the following technical terms to convey the following meanings:

20.     IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

21.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections

7

between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

22. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

23. As described above and in Attachment B, this application seeks permission to search for records that might be found during the search of the phones described in Attachment A. One form in which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

24. Probable cause. I submit that if a computer or storage medium is found during the execution of this search warrant, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

25. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

26.     Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

27.     Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

28.     Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

29.     Forensic evidence. As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium found during the execution of this search warrant because:

30.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were

9

recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

31.     As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the internet.

Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

32. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

33. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and

11

passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

34. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

35. Necessity of seizing or copying entire computers or storage media. In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

    a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic electronic evidence, it is exceedingly likely that it will be

necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

36. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted

13

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

37.    It is possible that the ELECTRONIC DEVICES will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

38.    Based on the foregoing, probable cause exists to search and examine the ELECTRONIC DEVICES identified in Attachments A, for the items described in Attachment B.

Respectfully submitted,

Tyler Schwab, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on February __4__, 2026

Kimberly A. Jolson
United States Magistrate Judge

14

## ATTACHMENT A

### Property to Be Searched

The property to be searched is an Apple iPhone 13 with IMEI: 352678434577844, which is currently located at the Columbus Police Property Room located at 724 East Woodrow Avenue, Columbus, Ohio 43207.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

### Property to Be Seized

1.　　All records relating to violations of 21 U.S.C § 841(a)(1) and 846 (conspiracy to distribute and possess with intent to distribute controlled substances), those violations involving ZAKARIA DAHIR including:

    a.　　incoming and outgoing call and text message logs;

    b.　　contact lists;

    c.　　photo and video galleries;

    d.　　sent and received text messages;

    e.　　online searches and sites viewed via the internet;

    f.　　online or electronic communications sent and received, including email, chat, and instant messages;

    g.　　sent and received audio files;

    h.　　navigation, mapping, and GPS files;

    i.　　telephone settings, including speed dial numbers and the telephone number for the ELECTONIC DEVICE and related identifying information such as the ESN for the ELECTRONCIC DEVICE;

    j.　　call forwarding information;

    k.　　messages drafted but not sent; and

    l.　　voice messages.

2.　　For any computer, storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

2

a.  Evidence of who used, owned, or controlled the COMPUTER at the time the records or information described in this warrant were created, edited or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chats," instant messaging logs, photographs, and correspondence;

b.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

c.  evidence of the lack of such malicious software;

d.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

e.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

f.  evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

g.  evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

h.  evidence of the times the COMPUTER was used;

i.  passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

3

j.     documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

k.     records of or information about Internet Protocol addresses used by the COMPUTER;

l.     records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

m.     contextual information necessary to understand the evidence described in this attachment.

The terms "records" and "information" includes all the foregoing items of evidence in whatever form and whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard discs or other media that can store data); any handmade form (such as written); any mechanical form (such as printed, typed, recorded on a magnetic tape or digital audio file); and any photographic or photomechanical form (such as microfilm, microfiche, prints, slides, negatives, digital image file, videotapes, motion pictures, digital video files, or photo copies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, personal digital assistants, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include, but are not limited to, hard disks, random access memory, floppy

4

disks, flash memory, compact disks, subscriber identity module ("SIM") cards, back-up tapes, device memory buffers, and other magnetic, optical, and solid electronic media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.